UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL BONANO,

                            Plaintiff,

            v.

LOUIS E. TILLINGHAST, Corrections Officer,
et al.,

                            Defendants.

_____

DECISION & ORDER

18-CV-6405FPG

Plaintiff Michael Bonano ("Bonano"), proceeding *pro se*, filed a complaint

asserting claims under 42 U.S.C. § 1983 against Louis E. Tillinghast, Captain Montegari, James

C. Edger, Michael T. Ruth, Jr., David M. Rackett, Clifton J. Adriance, III, Charles Esgrow,

Stephen J. Maher, and Director Venetozzi (collectively, "defendants").[1]  (Docket # 1).

Defendants are all employees of the New York State Department of Corrections and Community

Supervision.  (*Id.*).  Bonano alleges he was assaulted by defendants Tillinghast, Edger, Ruth,

Rackett, and Adriance on March 17, 2016, while he was incarcerated at Southport Correctional

Facility.  (*Id.*).  Bonano further alleges that defendants Esgrow, Montegari, and Venetozzi

violated his procedural due process rights during Tier III Superintendent's hearings that followed

the March 17, 2016 incident and that defendant Maher retaliated against him by referring him for

criminal prosecution as a result of Bonano's alleged conduct during the same incident.[2]  (*Id.*).

---

[1] Bonano's complaint named several additional defendants who have since been dismissed from the action.
(Docket ## 7, 17).

[2] Bonano's complaint originally contained eighteen separate claims alleging excessive use of force,
conspiracy to engage in use of force, violation of his procedural due process rights, retaliation and selective and
malicious prosecution, supervisory liability, and failure to investigate.  (Docket ## 1; 7 at 15-16).  The district court
dismissed with prejudice Bonano's claims for selective and malicious prosecution, retaliation against all defendants

Defendant Tillinghast has filed a counterclaim against Bonano for assault and battery, which allegedly caused him pain and suffering and resulted in physical injury. (Docket # 36 at 4).

Currently pending before this Court are four motions brought by Bonano. The first seeks an order authorizing the issuance of deposition notices and subpoenas and compelling the production of documents. (Docket # 73). The second requests an order appointing a psychiatric expert and requiring defendant Tillinghast to undergo a mental examination. (Docket # 74). The third motion seeks an extension of the scheduling order, and the final motion requests a stay of the litigation. (Docket ## 88, 91). The Court addresses each of Bonano's requests in turn.

## Motion to Authorize Deposition Notices and Subpoenas

Bonano asks the Court to authorize notices of deposition for all nine defendants. (Docket ## 73, 75). The requested notices demand, among other things, that the defendants produce their personnel files and any complaints against them arising out of the use of force or falsification of misbehavior reports – a request that previously has been addressed by defendants.[3] (Docket ## 61 at ¶ 10; 75). Bonano also requests that the Court authorize ten non-party subpoenas for testimony and documents. (Docket ## 73, 78). Specifically, Bonano seeks to depose several former defendants, including Michael Sheahan, Kevin Signor, James P. Thompson, Bill Wagner, Weeden A. Wetmore, Shawn Orchard, Marc D. McGrain, Thomas

---

except Maher, and failure to investigate claims. (Docket # 7 at 30). Additionally, the district court conditionally dismissed Bonano's claims for conspiracy, due process violations involving several defendants, and supervisory liability claims, and instructed Bonano to file an amended complaint in the event he wished to proceed on those claims. (*Id.*). Because Bonano never filed an amended complaint, those claims subsequently were dismissed with prejudice. (Docket # 17).

[3] Although the notices seek production of other documents, the notices have not yet been served and defendants have not had an opportunity to respond to those requests. Accordingly, such requests are not before the Court at this time, and they are not addressed herein.

2

Bennett, and Anthony J. Annucci.  (Docket # 78).  Bonano also seeks to depose Parole Chairwoman Tina Stanford.  (Docket ## 73 at ¶¶ 117-18; 78 at 10-13).  Finally, Bonano requests that any authorized depositions be required to proceed in person.  (Docket # 73 at ¶ 120).

Defendants oppose the motion, maintaining that Bonano should not be excused from paying the costs associated with conducting depositions, including witness fees, stenographer fees, daily attendance fees, mileage allowances, and charges for copies of the deposition transcripts.  (Docket # 81 at ¶ 2).  In reply, Bonano maintains that he has already arranged for and paid a court reporter approximately $1,750 – an amount which reportedly covers the costs of a full day of testimony and the transcript costs.  (Docket # 84 at 6, ¶ 3).  With respect to witness fees and mileage, Bonano has represented that he is able and willing to pay those costs.[4]  (*Id.* at ¶¶ 4, 6-7).

As a general matter, I agree with defendants that Bonano's *in forma pauperis* ("IFP") status does not relieve him of the obligation to pay litigation expenses, including deposition costs.  "The cost[] of a deposition . . . is usually borne by the party taking the deposition, even when that party is proceeding *pro se* and granted *in forma pauperis* status." *Nowlin v. Lusk*, 2014 WL 298155, *9 (W.D.N.Y. 2014).  Moreover, federal courts are not authorized to waive or pay witness fees for an IFP litigant.  *Malik v. Lavalley*, 994 F.2d 90, 90 (2d Cir. 1993); *see also Breedlove v. Mandell*, 2009 WL 500865, *1 (W.D.N.Y. 2009) (citing *Koehl v. Greene*, 2007 WL 4299992, *3 (N.D.N.Y. 2007) ("[a] litigant proceeding *in forma pauperis* does not have a right to a waiver of the cost of a deposition stenographer")).  Of course, an IFP plaintiff "is not without means to investigate his case" through alternative discovery

---

[4]  Bonano suggests that such amounts need not be tendered pursuant to 28 U.S.C. § 1825(c) as he has *in forma pauperis* status.  (Docket # 84 at ¶ 5).  That provision, however, is not applicable to Bonano, as the Attorney General is not responsible for those costs pursuant to 28 U.S.C. §§ 1825(a) or (b).  *See* 28 U.S.C. § 1825(c).

devices, such as document demands and interrogatories.  *Woodward v. Mullah*, 2010 WL

1848495, *9 (W.D.N.Y.), *report and recommendation adopted by*, 2010 WL 1848493

(W.D.N.Y. 2010); *see also Fowler v. Fischer*, 2017 WL 1194377, *1 (W.D.N.Y. 2017) ("[g]iven

these logistical and financial realities, many . . . *pro se* plaintiffs utilize other devices such as

interrogatories, deposition by written questions, or requests for admissions to obtain needed

discovery"); *LaBounty v. Coombe*, 1996 WL 30291, *1 (S.D.N.Y. 1996) ("[t]he preference in

this [d]istrict in *pro se* prisoner actions is for interrogatories rather than depositions of

defendants"); *McConnell v. Pepp*, 1991 WL 50965, *1 (S.D.N.Y. 1991) ("[c]onsidering that

plaintiff is . . . proceeding *in forma pauperis,* we believe that the service of interrogatories by

plaintiff is a more practical means of discovery").

As noted above, Bonano seeks to depose nineteen individuals, including the

named defendants and ten non-parties.  Although Bonano has represented that he has secured

and paid for the services of a stenographer, to date he has only arranged for a single day of

testimony.  Given the substantial number of individuals whom he seeks to depose, the Court

finds it unlikely that Bonano would be able to conduct all of the depositions that he currently

seeks in a single day.

Under these circumstances, the Court authorizes Bonano to proceed with the

depositions of the named defendants, and denies without prejudice the remainder of his motion –

authorization for the issuance of non-party subpoenas.[5]  After the named defendants have been

deposed, Bonano may renew his application for the non-party subpoenas.  In connection with

any renewed motion, Bonano must present a plan demonstrating how he will pay for deposition

costs and witness fees.  *McCray v. Ayers*, 2015 WL 2095760, *4 (W.D.N.Y. 2015) ("the

---

[5]  The Court makes no findings regarding the relevance of the requested testimony and documents sought
from the non-parties.

plaintiff's request for subpoenas is denied without prejudice at this time[;] [t]he [c]ourt directs the plaintiff to formulate a plan as to how he would pay for the fees and other costs associated with the taking of depositions in this case").

Bonano also seeks an order of the Court requiring that the depositions be conducted in person.  (Docket # 73 at ¶ 120).  According to Bonano, given the number of requested witnesses, as well as the volume of documents to be used during the deposition, he believes it would be most efficient to conduct the depositions in person.  (*Id.*).  Due to health and safety concerns, defendants have proposed conducting depositions "via Webex or other video conferencing service."  (Docket # 70).  As reflected in the February 24, 2021 General Order issued by Chief United States District Court Judge Frank P. Geraci, Jr., "although the incidence of COVID-19 cases appears to be decreasing, there continues to be great concern about the magnitude of COVID-19 and, in particular, new strains of the virus which have been recently discovered."  Indeed, the current General Order stays civil and criminal in-person proceedings through April 23, 2021.  Moreover, since the filing of his motion, Bonano has been arrested and is currently incarcerated (Docket # 91) – a change in circumstances that makes it unlikely that Bonano would be able to conduct any in-person depositions during the period of his detention.  Accordingly, the Court denies Bonano's request for a directive ordering that any noticed depositions be conducted in person.

**<u>Motion to Compel Production of Documents</u>**

As stated above, Bonano's motions request that the Court order production of various documents, which he maintains are relevant to the pending claims.  Bonano seeks the following: (1) documents contained in defendants' personnel files, namely, all complaints

5

against them for use of force or falsification of misbehavior reports[6] (Docket ## 73 at ¶¶ 23-26, 36, 43; 75; 84 at ¶¶ 16-25); (2) documents from Tillinghast's Workers' Compensation file[7] (Docket ## 73 at ¶ 23; 74 at 3; 84 at ¶ 26); and (3) transcripts of two Tier III hearings (Docket # 73 at ¶¶ 7-17).[8]  Defendants oppose the requests.  (Docket # 81).

With respect to the named defendants' personnel files, defendants maintain that they have reviewed defendants' files for matters relating to defendants' truth and veracity and use of excessive force and that no responsive documents are contained in the files.  (*Id.* at ¶ 7).  As this Court has already advised Tillinghast (Docket # 83 at 4 n.7), defendants are under an obligation to produce any such responsive documents within their possession, custody, or control, not only those contained in their personnel files.  Indeed, Bonano has identified three instances in which he maintains Tillinghast has been accused of use of excessive force or

---

[6] As noted above, the deposition notices directed to the named defendants request that they produce their personnel files and any complaints filed against them by any Southport inmate arising out of the use of force or falsification of misbehavior reports.  (Docket # 75).  In addition, Bonano served document requests specifically requesting Tillinghast's personnel file and any complaints against him.  (Docket # 59 at 4-5).  Although Bonano requests defendants' entire personnel files, the only specific documents he requests are excessive force or falsification complaints made against the named defendants.  To the extent Bonano seeks other documents that may be contained in the named defendants' personnel files, that request is denied in the absence of any showing why the remainder of the personnel files would likely be relevant to his claims.

[7] The Court interprets Bonano's motions as requesting Tillinghast's Workers' Compensation records.  (Docket ## 73 at ¶ 23; 74 at 3; 84 at ¶ 26).  To the extent that Bonano's proposed Notice of Deposition to Tillinghast seeks access to Tillinghast's medical records other than those in the Workers' Compensation records (Docket # 75 at 10), that request is not currently pending before the Court.  *See supra* note 3.

[8] In his reply submission, Bonano also requests the Court to compel production of documents that were the subject of his September 21, 2019 documents requests.  (Docket # 84 at ¶ 27).  Specifically, he seeks (1) any memoranda written by the District Attorney's office regarding the 2018 prosecution of Bonano for assault; (2) the referral for prosecution letter sent by Maher to District Attorney Wetmore, and (3) specific documents generated by Southport Correctional Facility, including copies of use of force reports involving Tillinghast, tabulations of uses of force against SHU prisoners, and court-ordered or department memorandums requiring such reports.  (*Id.* at ¶¶ 27, 29).  These issues were raised for the first time in reply.  Further, defendants provided a written response to the September 21, 2019 document demands on October 9, 2020, after Bonano had filed his submissions in connection with the pending motion.  (Docket # 86).  Accordingly, if disputes remain notwithstanding defendants' subsequent response, the parties must confer in good faith to try to resolve the disputes before seeking relief from the Court.

Bonano also makes a passing reference to "unredacted photos of Tillinghast's injury."  (Docket # 73 at 35).  It is not clear whether defendants oppose this request.  The parties are directed to confer in a good faith effort to resolve any dispute that may exist over this request.

falsification of reports involving inmates King, Vailes and Echevarria, at least one of which resulted in a liability verdict against Tillinghast for use of excessive force. (Docket ##73 at ¶¶ 37-39, 43; 84 at ¶ 24). Additionally, Bonano has identified several other complaints of excessive use of force or falsified reports made by other inmates, although it is unclear whether any of those involved any of the individual defendants. (Docket # 73 at ¶¶ 44-46, 54, 59). Accordingly, defendants are directed to search all documents in their possession, custody, and control and produce any complaints or grievances relating to the use of excessive force or falsification of reports against any of the named defendants. On or before **April 14, 2021**, defendants must provide a written response representing that such search has been conducted and that any responsive documents have been produced or that no responsive documents have been located.

Regarding Tillinghast's Workers' Compensation records, defendants have represented that voluminous responsive information exists and would be produced "subject to a Protective Order." (Docket # 86 at 2-3). Accordingly, defendants are directed to submit a proposed protective order to the Court on or before **March 31, 2021**. Within fourteen (14) days of the Court's entry of the protective order, defendants are directed to produce responsive documents from Tillinghast's Workers' Compensation records.

With respect to the transcripts of the Tier III disciplinary hearings, defendants represent that they will provide a copy of the audio recordings to Bonano. (Docket # 81 at ¶ 8). Defendants have not indicated whether they possess a transcript of those recordings. (*Id.*). If they have not already done so, defendants are directed on or before **April 14, 2021**, to provide the audio recordings to Bonano, along with any transcripts of the hearings in their possession, custody, or control. Of course, the Court cannot compel defendants to produce documents that

do not exist.  *See Ellison v. Allstate Indem. Co.*, 2013 WL 6191576, *2 (W.D.N.Y. 2013) ("the [c]ourt cannot compel production of documents that do not exist").  Accordingly, if defendants do not have a transcript of the recordings they cannot be compelled to produce one.  *See Freeman v. Rochester Psychiatric Ctr.*, 2015 WL 4250892, *4 (W.D.N.Y. 2015) ("if [defendant] had a written transcript, it would be required to produce it[;] . . . [d]iscovery rules do not require, however, that a party create a document not in existence"), *report and recommendation adopted by*, 2016 WL 748683 (W.D.N.Y. 2016); *Sileo v. Schuck*, 2010 WL 811321, *1 (W.D.N.Y. 2010) ("[d]efendants have represented that . . . no written transcript of [the disciplinary] hearing was created[;] . . . [a]ccepting defense counsel's representation that no transcript of the . . . hearing exists, I find that defendants have satisfied their discovery obligations as to the hearing transcripts").

Finally, in a single paragraph, Bonano requests recusal of defendants' current attorney based upon an alleged conflict of interest.  (Docket # 73 at ¶ 35).  Disqualification of counsel is generally disfavored, and the moving party must satisfy "a high standard of proof" to demonstrate that disqualification is justified.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983); *Wieme v. Eastman Kodak Co.*, 2004 WL 2271402, *1 (W.D.N.Y. 2004).  Careful scrutiny of disqualification motions is warranted because "disqualification has an immediate adverse effect on the client by separating him from counsel of his choice, and [because] disqualification motions are often interposed for tactical reasons."  *Bd. of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979); *Wieme v. Eastman Kodak Co.*, 2004 WL 2271402 at *2.  Despite this high standard, doubts should be resolved in favor of disqualification.  *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir. 1975); *Wieme*, 2004 WL 2271402 at *2.  Having

reviewed the submissions, I do not find that they demonstrate that disqualification of counsel is warranted.

**Motion to Appoint a Psychiatric Expert Witness**

Bonano asks the Court to appoint a psychiatric expert witness and to require defendant Tillinghast to submit to an independent psychiatric examination by that expert. (Docket # 74).  Tillinghast opposes the motion, maintaining that Bonano should not be excused from paying for the costs of an expert.  (Docket # 81 at ¶¶ 1-2).  Additionally, Tillinghast maintains that his mental health has no relevance to this action.  (*Id.* at ¶ 5).

Rule 706 of the Federal Rules of Evidence allows the Court, on its own motion or on motion of another party, to appoint an expert witness.  Fed. R. Evid. 706(a); *Pabon v. Goord*, 2001 WL 856601, *1 (S.D.N.Y. 2001).  The Court has broad discretion in determining whether to appoint an expert witness.  *Pabon v. Goord*, 2001 WL 856601 at *1.  In deciding whether to appoint an expert witness, the Court considers "such factors as the complexity of the matters to be determined and the Court's need for a neutral, expert view."  *Benitez v. Mailloux*, 2007 WL 836873, *1 (N.D.N.Y. 2007) (citations and quotations omitted).

The appointment of an expert witness pursuant to Rule 706 is not intended to aid litigants, but rather "to aid the Court, through the services of an impartial expert, in its assessment of technical issues."  *Id.*; *see also Reynolds v. Goord*, 2000 WL 825690, *2 (S.D.N.Y. 2000) ("[t]he most important factor in favor of appointing an expert is that the case involves a complex or esoteric subject beyond the trier-of-fact's ability to adequately understand without expert assistance") (quoting 29 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6304 (1997)).  The Court should "bear in mind the substantial expense

that defendants may have to bear if the [c]ourt appoints an expert in a case where . . . one of the parties is indigent." *Muhammad v. Wright*, 2009 WL 3246731, *1 (W.D.N.Y. 2009). Considering the substantial costs that may result, the Court's appointment of expert witnesses should be used sparingly. *Id.* (citing *Benitez v. Mailloux*, 2007 WL 836873 at *2). "The enlistment of court-appointed expert assistance under Rule 706 is not commonplace," and courts appoint experts under Rule 706 "relatively infrequent[ly]." *In re Joint E. & S. Dists. Asbestos Litig.*, 830 F. Supp. 686, 693 (E.D.N.Y. 1993) (citations and quotations omitted). "[M]ost judges view the appointment of an expert as an extraordinary activity that is appropriate only in rare instances." *Id.* (citations and quotations omitted). In addition, "the mere fact that a [p]laintiff has been permitted to proceed . . . *in forma pauperis* entitles him only to the right to proceed without the prepayment of filing fees and the cost of service." *Benitez*, 2007 WL 836873 at *2. Simply stated, *in forma pauperis* status "does not authorize payment or advancement of discovery expenses by the court." *Boyd v. Deasis*, 2020 WL 3566636, *2 (W.D.N.Y. 2020) (quotations and bracket omitted); *Graves v. Corr. Med. Serv.*, 2015 WL 1823456, *9 (W.D.N.Y. 2015) ("the plain language of section 1915 does not provide for the appointment of expert witnesses to aid an indigent litigant") (quotations omitted), *aff'd*, 667 F. App'x 18 (2d Cir. 2016) (summary order).

The issues in this case arise from a brief incident involving Bonano and defendants and do not appear to be esoteric or medically complex. For that reason, the Court does not find appointment of an expert witness is necessary at this time. Should the Court later determine that appointment would be appropriate, it may do so at that time. Accordingly, Bonano's motion is denied without prejudice. *See DeJesus v. Malloy*, 2020 WL 5554518, *2 (W.D.N.Y. 2020) (denying appointment of medical expert witness because alleged injuries from

pat-frisk were "discrete" and not "medically complex"); *Dowdell v. City of Rochester*, 2013 WL 5504145, *2 (W.D.N.Y. 2013) (denying appointment of psychiatric expert witness where plaintiff allegedly sustained psychological injuries during arrest).

        Of course, whether Bonano is entitled to a psychiatric evaluation of Tillinghast at public expense is an entirely different question from whether Bonano is permitted to seek an evaluation of Tillinghast pursuant to Rule 35 of the Federal Rules of Civil Procedure at his own expense. In determining that a court-appointed expert is not warranted at this time, the Court need not – and does not – determine whether a psychiatric independent medical examination ("IME") of Tillinghast would be likely to yield information relevant to this action. Although defendants maintain that Bonano's request represents an "impermissible invasion of privacy with an intent to harass, annoy, and humiliate [Tillinghast]" (Docket # 81 at ¶ 5), the Court notes that Tillinghast may have placed his mental health at issue by virtue of the assault counterclaim he has asserted against Bonano alleging physical injury and pain and suffering (Docket # 36). As highlighted by Bonano, Tillinghast has allegedly complained of suffering from severe mental health problems in connection with the March 17, 2016 altercation. The docket in this matter does not reflect that Tillinghast has served his initial disclosures (*see* Docket ## 56, 65), and, if he has not, whether he is seeking recovery for emotional distress damages. Such information would be pertinent to any determination by this Court as to the relevance of Tillinghast's psychiatric condition. Counsel for Tillinghast shall advise plaintiff and the Court in writing by no later than **April 14, 2021** whether Tillinghast seeks emotional distress damages in connection with the counterclaim. If so, plaintiff is not precluded from serving a notice for an IME in compliance with the requirements of Fed. R. Civ. P. 35(a)(2), provided that he can demonstrate that he has the ability to pay the designated expert's fee for the examination.

**Motions for an Extension and to Stay**

On January 5, 2021, Bonano filed a motion requesting an extension of the current scheduling order, which defendants did not oppose.  (Docket ## 88, 89).  On March 22, 2021, Bonano notified the Court that he recently had been incarcerated and requested a stay of this action due to his incarceration for between ninety and one hundred and eighty days.  (Docket # 91).  In response to the Court's inquiry, defendants indicated that they do not oppose the requested stay.

Given the lack of opposition, the Court grants Bonano's request and hereby stays this litigation until **June 21, 2021**.  The stay applies to all aspects of the litigation, including depositions, but does not apply to the following:  (1) the requirement that defendants serve the written responses to document requests and produce the documents referenced herein by **April 14, 2021**; (2) the requirement that defendants submit a proposed protective order by **March 31, 2021**; and, (3) the requirement that defendant Tillinghast serve the written statement advising whether he seeks emotional distress damages in connection with his counterclaim by **April 14, 2021**.  Following the expiration of the stay on June 21, 2021, the parties must confer, and by no later than **July 6, 2021**, they must submit a jointly-proposed scheduling order to the Court. Having concluded that a stay is appropriate, Bonano's motion for an extension of the current scheduling order (Docket # 88) is denied as moot.

## CONCLUSION

For the reasons stated above, Bonano's motion for an order authorizing depositions and subpoenas and compelling the production of documents **(Docket # 73)** is **GRANTED in PART and DENIED in PART**.  Bonano's motion seeking an appointment of a psychiatric expert **(Docket # 74)** is **DENIED without prejudice**.  Bonano's motion for a stay

**(Docket # 91)** is **GRANTED**, and Bonano's motion for an extension of the current scheduling order **(Docket # 88)** is **DENIED as MOOT**.

**IT IS SO ORDERED.**

*s/Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
      March 24, 2021